UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| RAY LABONTE, Personal Representative of the Estate of Kelly LaBonte, Deceased, and as Guardian of Braydon LaBonte, a Minor,<br><br>    Plaintiff,<br><br>    v.<br><br>DAIMLER-CHRYSLER, a Foreign Corporation, and KEY SAFETY SYSTEMS, INC., a Foreign Corporation,<br><br>    Defendants. | CAUSE NO.: 3:07-CV-232-TS |

**OPINION AND ORDER**

This matter is before the Court on Defendant Key Safety Systems, Inc.'s, Motion for Summary Judgment (DE 24), filed on December 21, 2007. The Defendant contends that it did not manufacture the seat belt that is the subject of the Plaintiff's suit. The Plaintiff's response, filed on January 21, 2008, states that he "enters a no opposition response to Defendant Key Safety System's Motion for Summary Judgment." (DE 29.)

**PROCEDURAL BACKGROUND**

On April 9, 2007, the Plaintiff, Ray LaBonte, as the personal representative of the estate of Kelly LaBonte, deceased, and as guardian of Braydon LaBonte, a minor, filed a Complaint against DaimlerChrysler and Key Safety Systems, in Pulaski Circuit Court. The Plaintiff seeks damages for the death of Kelly LaBonte, who was killed on May 29, 2005, in an automobile accident while driving a 1996 Jeep Grand Cherokee. The Complaint alleges that the seatbelt in

the Jeep Grand Cherokee was defective and unreasonably dangerous. DaimlerChrysler is named as a Defendant because it designed, tested, manufactured, assembled, and sold the Jeep Grand Cherokee. Key Safety Systems is named as the manufacturer and seller of the seat belt system used in the Jeep. (Pl. Compl., Second Cause of Action, ¶ 3) (alleging that Key Safety Systems "designed, tested, manufactured, assembled and sold the driver's seat belt system used in the 1996 Jeep Grand Cherokee . . . which is the subject matter of this suit, and placed it into the stream of commerce").

On May 16, Defendant DaimlerChrysler removed the matter to federal court with the consent of Defendant Key Safety Systems. On December 11, 2007, DaimlerChrysler filed its answer. On December 21, Key Safety Systems filed a motion for summary judgment. On January 21, 2008, the Plaintiff filed a No Opposition Response to Defendant Key Safety System's Motion for Summary Judgment. On February 6, 2008, Key Safety System requested that the Court enter final judgment in its favor pursuant to Federal Rule of Civil Procedure 54(b) because there is no just reason for delay in entering such judgment.

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). Where, as in this case, the motion for summary judgment is not opposed and the movant's facts are not controverted, the court "will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy." N.D. Ind. L.R. 56.1(b). However, even if a motion for summary judgment is unopposed, the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir. 1993).

## STATEMENT OF FACTS

On May 29, 2005, Kelly LaBonte was killed in an automobile accident while driving a 1996 Jeep Grand Cherokee. During the accident, her seatbelt retraction unlocked, allowing the seatbelt to freely spool out.

Key Safety Systems did not manufacture the seatbelt in the Jeep Grand Cherokee that is

3

the subject of the Plaintiffs' claim. The manufacturer's label attached to the webbing of the seatbelt assembly indicates that it was manufactured by AlliedSignal on April 4, 1996. Key Safety Systems did not begin to manufacture seatbelts until after this date, on October 30, 1997.

On October 30, 1997, Key Safety Systems (then known as Breed Technologies, Inc.) purchased assets from AlliedSignal that were used in its Restraint System business. As part of the asset purchase agreement, Key Safety agreed to assume AlliedSignal's potential liabilities for certain events, including for personal injury claims involving products that were manufactured before October 30, 1997, but involved in accidents after October 30, 1997.

On September 20, 1999, Breed Technologies, Inc., filed for reorganization under Chapter XI of the United States Bankruptcy Code. During the reorganization, executed contracts that were not specifically assumed in the plan of reorganization were rejected. The asset purchase agreement between Breed Technologies and AlliedSignal was not assumed. In a confirmation order, the bankruptcy court discharged Breed Technologies from claims that arose from any agreements entered before the confirmation date. The court's order further provided that "All persons are permanently enjoined from, and restrained against, commencing or continuing in any court any suit, action or other proceeding, or otherwise asserting any claim or interest seeking to hold reorganized Breed . . . liable for any claim, obligation, right, interest, debt or liability for any claim, obligation, right, interest, debt or liability that has been discharged or released pursuant to section 11.1 . . . of the Plan." (Boyd Aff. ¶ 7.) The effective date of the reorganization plan was December 26, 2000.

In 2003, Breed Technologies changed its name to Key Safety Systems.

4

**DISCUSSION**

**A.      Liability as the Manufacturer of the Product**

In Indiana, any action brought by a consumer against a manufacturer for physical harm caused by a product is governed by Indiana Code § 34-20 et seq. *See* Ind. Code § 34-20-1-1; *see also* Ind. Code § 34-6-2-115 (defining a "product liability action" for purposes of Indiana Code § 34-20, as an action that is brought "against a manufacturer or seller of a product" and is "for or on account of physical harm"). A manufacturer is defined as "a person or entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product before the sale of the product to a user or consumer." Ind. Code § 34-6-2-77 (providing the definition of manufacturer for purposes of Indiana Code § 34-20).

Key Safety Systems was not a manufacturer of the seatbelt at issue in this suit. The seatbelt was manufactured by AlliedSignal on April 4, 1996, over 18 months before Key Safety Systems entered the occupant restraint business.

The undisputed facts establish that Key Safety Systems did not manufacture the seatbelt and cannot be held liable in a product liability action as a manufacturer. The Court must also address whether Key Safety Systems may be liable as a successor to the manufacturer.

**B.      Liability as a Successor to the Manufacturer of the Product**

Under Indiana's Product Liability Act, even a disclaimer of liability in a purchase agreement may not bar a strict liability claim. *Guerrero v. Allison Engine Co.*, 725 N.E.2d 479, 482 (Ind. Ct. App. 2000).

> When one corporation purchases the assets of another, the buyer does not assume the debts and liabilities of the seller. *Sorenson v. Allied Products Corp.*, 706 N.E.2d 1097, 1099 (Ind. Ct. App. 1999) (*citing Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1233 (Ind. 1994)). However, there are four generally recognized exceptions to this rule:
>
> (1) an implied or express agreement to assume the obligation; (2) a fraudulent sale of assets done for the purpose of escaping liability; (3) a purchase that is de facto consolidation or merger; or (4) instances where the purchase is a mere continuation of the seller.
>
> *Id.* Under these exceptions, a successor corporation is liable only when the predecessor corporation no longer exists. *Id.*

*Guerrero*, 725 N.E.2d at 483.

Here, the first exception applies because Key Safety Systems expressly contracted to assume AlliedSignals' liabilities. However, before the Plaintiff's accident, a bankruptcy court discharged Key Safety Systems from all liabilities associated with that contract. But this discharge does not impact the other exceptions to successor non-liability. Key Safety Systems's motion for summary judgment does not address the other exceptions or designate evidence relevant to these exceptions. On the record before it, this Court cannot conclude that, as a matter of law, none of the other exceptions would apply to expose Key Safety Systems to successor liability.

Key Safety Systems also points to the bankruptcy court's discharge injunction as evidence that it cannot be sued as a successor. Key Safety Systems argues that the Plaintiff, as a future contingent tort claimant, was an interested party in the bankruptcy proceedings under 11 U.S.C. § 1109(b). Key Safety Systems maintains that it provided the appropriate notice through publication to all interested parties before the confirmation of its reorganization plan, and that this notice was sufficient to "bind all 'interested parties' and extinguish all future, contingent tort

claims" against it. (DE 25 at 7.)

Key Safety Systems's argument is inconsistent with the Seventh Circuit's understanding that, with respect to ordinary torts, a victim has no claim for purposes of the bankruptcy code until an injury occurs. *Fogel v. Zell*, 221 F.3d 955, 960 (7th Cir. 2000). In *Fogel*, the court considered whether the "potential legal claim of a potential tort victim is a 'claim' within the meaning of the Bankruptcy Code." 221 F.3d at 958. The court recognized that, while a right that can be made the basis of a claim in bankruptcy may be contingent on something happening, if the contingency is the tort itself, practical and conceptual problems arise. 221 F.3d at 960. The court explained that selling a defective product is not a tort; the product liability tort requires that the product first cause harm. *Id.* The court acknowledged that in cases where mass tort claims had precipitated sellers into bankruptcy, courts allowed product liability claims to be filed in bankruptcy as long as the conduct giving rise to the claim, such as the manufacture and sale of a defective product, occurred before the petition in bankruptcy was filed. *Id.* at 961. However, even these courts suggested various limiting principles. The court in *Fogel*, rather than go through each of these principles, noted generally that it might be reasonable, in certain circumstances, to bring potential future claimants into the bankruptcy proceedings before they suffered harm giving rise to a mature tort claim. *Id.* at 962.

> It may not be possible to say anything more precise than that if it is reasonable to do so, bearing in mind the cost and efficacy of notice to potential future claimants and the feasibility of estimating the value of their claims before, perhaps long before, any harm giving rise to a matured tort claim has occurred, the bankruptcy court can bring those claimants into the bankruptcy proceeding and make provision for them in the final decree.

*Id.* The Court stated that this "test" would not apply to the situation presented by a hypothetical that the court provided earlier in its opinion:

7

> Suppose a manufacturer goes bankrupt after a rash of products-liability suits. And suppose that ten million people own automobiles manufactured by it that may have the same defect that gave rise to those suits but, so far, only a thousand have had an accident caused by the defect. Would it make any sense to hold that all ten million are tort creditors of the manufacturer and are therefore required, on pain of having their claims subordinated to early filers, to file a claim in the bankruptcy proceeding?

*Id.* at 960 (answering "no" to the question posed by the hypothetical).

Key Safety Systems has not established that this case is more like the mass tort "ticking-time-bomb" kind of cases, *see Fogel*, 221 F.3d at 961 (comparing the installation of defective sewer system pipes with inhaling a potentially dangerous substance), than the automobile hypothetical. The Plaintiff did not have a claim against Key Safety Systems in 1999 when it filed for bankruptcy and thus, the bankruptcy court's discharge injunction does not bar the Plaintiff from filing suit for harm suffered in 2005. Therefore, the undisputed facts do not establish, as a matter of law, that Key Safety Systems cannot be held liable as a successor to the seatbelt manufacturer.

**CONCLUSION AND ORDER**

Despite the unopposed nature of the motion, the Court is required at this stage of the litigation to deny Key Safety Systems' motion for judgment as a matter of law. The Court recognizes, however, that it may have been the intent of the parties that Key Safety Systems be dismissed from this action pursuant to Rule 41. If this is not the parties' intent, it would be in the interest of justice to allow Key Safety Systems an opportunity to address the exceptions to successor non-liability that were not discussed in its first motion for summary judgment. Key Safety Systems would be given leave to file a second motion for summary judgment

demonstrating either that the Plaintiff would be unable to produce any evidence at trial that it is liable as a successor, or that its affirmative evidence disproves any claim for successor liability.

For the foregoing reasons, Key Safety Systems's Motion for Summary Judgment (DE 24) and Motion for Entry of Final Summary Judgment and Tender of Order Thereon (DE 30) are DENIED WITHOUT PREJUDICE. A telephonic status conference to discuss the parties' positions, and to set any necessary briefing schedule, is set for Wednesday, February 20, 2008, at 2:00 PM before Judge Theresa L. Springmann. The Court will initiate the call.

SO ORDERED on February 14, 2008.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION